We proceed to the next case, Don E. Dugan v. Industrial Commission, 4-1104-14. Counsel, please. Good afternoon, your honors. Mr. Murphy. Please, the court. I'm Brad Pileski. I'm here for Don Dugan, the appellant, today. This is a manifest way of the evidence case. And although I know those aren't favored types of cases, I think that in this particular instance, the arbitrator's decision and the commission's decision affirming that decision are against the manifest way of the evidence. And since the facts have been outlined very thoroughly in both of our briefs, I'm only going to recount just a brief summary of the facts to provide a context for my argument. Mr. Dugan worked as a gas electric meter changer for Ameren IP on December 16, 2004. He testified that he felt fine when he reported for work on that date. He had just changed a meter and was carrying a ladder and the old meter back to the truck when he stepped in a hole and fell backwards. He claims to have had an immediate onset of low back pain and left leg numbness. And this occurred approximately 10 o'clock in the morning. He completed the rest of his shift that day. If you read through all of the testimony, you'll see that he was working outside of his normal territory. And he was at work from the moment that he left his home until he reported to the job, to Hillsboro, to their facility there to pick up additional equipment. He denied telling anybody that day that he had sustained an injury. He didn't see his supervisor and he denied telling anyone that he had sustained injury. He did report the injury the next day to his supervisor, Sean Benslyke. And then he asked for medical treatment and advised that he was going to see his chiropractor. He went and saw his chiropractor on December 17. And that was who? That was Dr. Brown. Isn't that one of the problems here? I mean, looking at the commission decision, didn't they find that the claimant gave some conflicting versions of what happened in the accident and how it happened? He maintained he stepped into a hole. He doesn't say anything to Brown until the fifth treatment about stepping in a hole. The claimant's witness, the first person he talked to, he didn't say stepped in a hole. It's inconsistent with Brown's record. So isn't that a credibility issue here that weighs against your claim? Your Honor, I agree that that's, I think that's a correct depiction of this. However, I think if you allow that my client is a credible witness and that he indeed did tell his doctor, his chiropractor, the mechanism of injury, which shows up on January 5 in the doctor's statement of disability. But that's after he's met with him five times. I agree. However, if indeed he reported to Mr. Van Slyke, who was not called as a witness by either myself nor the employer, which I would point out the employer has control over Mr. Van Slyke, I don't. And I would have thought that you would bring the supervisor to whom one reported this to arbitration, but that's not how this went down. In my argument, I was going to point out that they did bring Dallas Jett in to testify. And Mr. Jett admitted he wasn't even my client's supervisor on the date in question. He was adamant that he spoke to him on December 16. However, if you look at the rest of the testimony, you'll find that my client was not present to speak to him that day. He was in a different location and would not have had opportunity to speak to him on that date. If you look at the document from which Mr. Jett testified, it shows December the 29th on there as far as the date. That date also reports with the same day that the recommendation had been made by Dr. Brown for his MRI scan, which is consistent with that form as well. I do not think that Mr. Jett intended to be misleading. I don't think that he was trying to be deceptive. I think he genuinely was confused about what day that he spoke to my client. But if you look through all of the medical records, from Dr. Brown's office through to all of the orthopedic surgeons and neurosurgeons that my client has seen, his story remains consistent. Now, let me just interject something since you've alleged that it's consistent. The arbitrator noted that Clement testified that he had no problems with his low back or left leg prior to the claimed injury on December 16, 2004. Then they looked at the statements with the history of chiropractic treatments received from Dr. Brown and the Staunton Chiropractic Center. And that was in conflict with his testimony that he had no prior back problem. So isn't that another fact that weighs against him? Well, I think that's a mischaracterization because here's why I say that. He claimed that he was fine the morning before the accident, which is what his testimony was. He didn't say that he had no problems with his back before. As a matter of fact, he testified that he had seen the chiropractor. He told Dr. Bernardi that he had seen the chiropractor. He told Dr. Dahl that he had seen the chiropractor. He told his physician, Dr. Williams, that he had seen the chiropractor. So I find it somewhat disingenuous that they point to him saying, well, I was fine that morning, to say that I never had any problems before. Because clearly he did, and clearly the records are what the records are. Was the claim presented as an aggravation or acceleration of a pre-existing condition? It was not, was it? Well, certainly it would have been an aggravation or an acceleration of a pre-existing condition. Was that argued before the arbitrator? What we alleged was a distinct traumatic accident. Right. And I guess what I'm trying to get to is a distinct traumatic accident can accelerate or worsen a pre-existing condition. I don't think that you have to say, well, this is an aggravation of an underlying condition in order for it to be compensable. If you're all in on one theory and you say it's a single traumatic accident, not an aggravation, and then we find out months go by and he's describing the mechanism as getting in and out of a truck, and then for some allocation it's actually stepping in a hole, I mean, that's a pretty varying description. Which I think that I still, this is my personal opinion on this, I believe my client, and I believe this, getting in and out of a truck after sustaining a traumatic injury on December 16, 2004, the act of getting in and out of the truck would aggravate that condition, would cause that condition to constantly pain you if indeed you sustained an injury to your low back. And I think it's an accurate description. He was not held off work, nor did he miss work the next day. He went to work, reported his accident. He was not held off work until well after he had treated through a progression of company referred physicians. Is there any indication why you saw Dr. Brown on December 17th, December 29th, December 31st, and January 3rd, and the records contain no reference to stepping in a hole? The records are sparse on their face, your honor. Well, sparse on their, how can a commission decision be wrong based on that? I think that if you allow my client the reasonable inference that indeed what he stated under oath is true, then these records reflect the type of treatment one would receive for that type of injury. Now, from what I understand, the commission's decision, affirming the arbitrator's decision, they basically just stamped it and moved it on. I still believe that there are other factors in this that bode well for my client. My client was consistent from the time that he saw Dr. Brown on. He had an escalation in treatment following this December 16th incident. He had a MRI scan, which he had never had an MRI scan ordered before, performed before. He followed through with all of the treatment recommendations, whether they be made by Dr. Brown or by one of the company-referred physicians. The problem comes in when he decided that he should follow up with a doctor of his choosing. That's when everything goes bad. And that's, if you look at the time when he goes to see his family doctor and gets to Dr. Schmucker, shortly following his first appointment with Dr. Schmucker is when his application for adjustment to claim is filed. Can I ask you a question? Yes, sir. The arbitrator filed and the commission affirmed the statement that your client's allegation of a specific injury, stepping into a hole, is inconsistent with the testimony of Dallas Jett. Is it really inconsistent? Yes. They found that Jett said that your client reported that he had been experiencing difficulty getting in and out of his truck. Is it inconsistent to experience difficulty getting in and out of your truck after you step in a hole and fall down? No, Your Honor. It's not inconsistent. And the other aspect of that is this. When he did report this to Mr. Jett about the truck seat, there's certainly no inconsistency in having pain getting in and out of a vehicle repetitively all day after you've sustained a specific injury. And it does boil down to a credibility decision. However, it's my position that the arbitrator and then the commission repeated the same mistake when based with all of the evidence, not just cherry-picking specific things that look like they may be inconsistent. We would ask that you reverse the decision of the arbitrator, the commission, and the circuit court and find this claim to be compensable. Award the temporary total disability periods outlined in my brief and the medical treatment that he's undergone. Are there any further questions? Thank you, counsel. Thank you. Counsel, please. May it please the court. Counsel, my name is Don Murphy. I'm here representing Amarant. First, let me address some of the statements made by counsel in his presentation. There's the admission that on the day of this alleged incident, stepping in the hole, that the petitioner didn't tell anyone about that incident. That's especially important considering that he wasn't working alone. We heard the testimony at trial of a Jared Volkmar who testified that there was no mention to him by Mr. Dugan of Mr. Dugan having stepped into a hole that day. So you would expect that if there was this single traumatic event, he would have told the gentleman that he was working with about no mention of that at the hearing. There's also the question of why we called Dallas Jett as a witness when we had access to Mr. Van Slyke and could have called him. First, let me point out that there was no subpoenas issued by Mr. Dugan for Mr. Van Slyke to testify. He had just the same opportunity to have him appear as we did, but we had no reason to have Mr. Van Slyke present. Why? Because according to the information that we had and the information that the arbitrator subsequently found to be most credible, the first report of pain in this gentleman's back was given to Mr. Jett. Mr. Jett completed the report regarding the report of pain. There was no reason for us to call Mr. Van Slyke to the stand or have him appear at the arbitration. We let him work that day. The final issue that was addressed during the presentation was the inconsistency of the testimony regarding the pain resulting from getting in and out of the truck. Let me just point out a couple things with regards to that. First of all, it would not be inconsistent if the pain resulted from getting in and out of the truck had there been a precipitating event. But we have to look at what happens if there was no first event. What happens if the pain only resulted from getting in and out of the truck and there was not this singular traumatic event? Dr. Cornett addressed that in his deposition. And he said, if there wasn't this stepping in the hole incident, then I can't draw the causal connection between his work activities and the problems with his back. It's very important for us to keep in mind in this case. So I would present to you that there are three major issues of factual dispute in this case. All three rely upon an arbitration and then a commission approval of determinations of credibility. And all three are supported by competent evidence of the record. All three should be upheld by this court. First of all, the question of to whom the accident was initially reported and when. There is competent evidence in the record that the first person to hear about problems in Mr. Dugan's back was Dallas Jett. That Dallas Jett did prepare this report. The testimony of Dallas Jett is clear that he did not prepare the report on the first date that it was told to him. Rather, he filled it out later. That's why the date of the report is different than the date that the condition was first reported to him. The commission found Dallas Jett's version of the facts simply to be more credible. Why?  First of all, they found his testimony to be consistent with the evidence that was submitted, that injury report, for him. There was also a consistency between Dallas Jett's testimony and the contemporaneous medical records from Dr. Brown of the Staunton Chiropractic Clinic, which, as the court pointed out, is crucial in this case. He had the opportunity to tell his chiropractor about what caused his problems in his back. And he did. He told him that he was experiencing pain getting in and getting out of his truck. Nowhere during his first five visits was there any mention of him stepping into a hole. It was certainly reasonable for the arbitrator and then the commission to review that evidence and determine that the medical records were most consistent with the testimony of Dallas Jett, and therefore give Dallas Jett's testimony more credibility than they gave to Mr. Dugan. The second area of factual determination and credibility made by the arbitrator regarded the onset of Mr. Dugan's complaints. If I can direct your attention to the testimony that he gave about what his back was like on the days immediately before this alleged accident, it will make clear what the arbitrator meant with her language. There is reference in the briefs and you've heard arguments that the arbitrator mischaracterized the evidence when she stated that Mr. Dugan had no complaints before December 16, 2004. Review of the evidence and a review of the rest of that paragraph in the arbitrator's decision makes it clear what she meant by those terms. Mr. Dugan testified that when he reported to work on December 16, 2004, he was fine, normal, everything was fine. On cross-examination, he was asked if he was pain-free on December 16, 2004, to which he replied yes. When I went to work, yes. So the arbitrator is making reference to that specific point in time, the time immediately before when he claims this incident occurred, that he says he was pain-free. Now, when you review the medical records, you can see that that wasn't necessarily the truth. That was the point behind this statement by the arbitrator. Clearly, the arbitrator wasn't stating in this paragraph that Mr. Dugan has never had back pain before. What she was referring to was, was he having back pain according to his testimony in the time frame immediately before this alleged accident? She found his testimony on this front to be not credible. The final issue of fact that also deals with credibility is, were the medical opinions offered to support the employee's injury being related to an incident where he stepped into a hole made less credible because they were premised on fatally flawed histories? Again, this is a straight question of credibility. The arbitrator and subsequently the commission was free to review all the medical records, weigh testimony against other testimony, and make a determination as to which of the medical providers she and they found most credible. They did that. And the evidence supports the arbitrator and the commission's conclusion. The arbitrator looked at the information that was given to Dr. Williams. Dr. Williams testified that he was not aware of the employee's prior chiropractic treatment, that he had not reviewed any chiropractic records concerning prior treatments of the alleged injury. He was not aware of a potentially different history of onset of symptoms, specifically the getting in and out of the truck and the problem with the seat. And he was not aware when the degenerative disc disease that ultimately required the surgical intervention first became symptomatic. Dr. Williams testified that the condition that caused the fusion to become necessary was the degenerative changes within the disc. Dr. Gornett also provided testimony on this case. His testimony, he stated, quote, Obviously, if he felt and provided a history significantly different than that, that being the Stephanie and the Hole incident, then I could not link it to that event. Dr. Gornett, in his deposition, was not aware that an employee had, in fact, provided a history significantly different than what had been provided to him. He was not aware of the initial reporting of pain getting in and out of the truck, and he did not know of the significant chiropractic records preceding this alleged event. Dr. Gornett says, interestingly, in his deposition testimony, he states, When you're trying to decide how to view the evidence in this case, directly from Dr. Gornett, it comes down to whether or not Mr. Dugan is credible. He has a credible history, and that you believe him. For once, we agree with Dr. Gornett. He's right. That's how you determine this type of case. And that's what the commissioner did, that's what the commission did, and that's what the arbitrator did. They looked at this evidence and found that Mr. Dugan's version of facts wasn't credible, and they found that the other testimony was more credible. So we ask that this court review the evidence, determine if there is any evidence in the record to support the commission's decision, find that there is, and affirm the decision of the lower courts. Thank you, counsel. Thank you. Well, I agree to some extent with counsel's remarks. Mr. Volkmer, who he referenced, who I called as a witness, was working with Mr. Dugan. However, he was not working in the same location. He was working in the same town. So they were not together throughout the course of the day other than at lunchtime and at the end of the day. If you look to the testimony in the transcript, you'll see that. At the end of the day, Mr. Volkmer noted that my client was laying on a bench outside of the shop and that he noted that he was grimacing. He, in turn, unloaded my client's truck for the day at the end of the day. As far as the history form is concerned, there was much made about this in the arbitrator's decision and the commission's review and in the briefs. This work comp history form completed at Dr. Brown's office, which is the chiropractor, the initial treater. He testified that I did not complete the form, but I did sign the form. Now, it's funny that for a repetitive getting in and out of the truck, there is a specific time. There's a specific time of day, which is indeed consistent with what he testified to at arbitration, 10 o'clock a.m. And finally, with regard to Mr. Dugan's testimony, he did say that he had treated with the chiropractor previously. If you look at the chiropractic notes beforehand, you will see that he did treat with him, even, I believe, the week before, but it was a very infrequent or sporadic type of treatment. That is not inconsistent with him being pain-free the morning that he showed up for work. It's not inconsistent with him having pain getting in and out of a vehicle after sustaining a specific injury. So, I'd ask that you carefully review the briefs and the evidence in this matter and weigh it accordingly. Thank you, Your Honor. Thank you, Counsel. The court will take the matter under advisement for disposition to a standard resource for a short period. Thank you.